UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
PAMELA WHITZELL,                    )
                Plaintiff,          )
                                    )   CIVIL ACTION
        v.                          )   NO. 09-11775-WGY
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner, Social Security       )
Administration,                     )
                Defendant.          )
                                    )
```

MEMORANDUM OF DECISION

YOUNG, D.J.                                          June 17, 2011

I.   INTRODUCTION

The plaintiff, Pamela Whitzell ("Whitzell"), brings this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). Whitzell challenges the decision of Administrative Law Judge Barry H. Best (the "hearing officer") denying her applications for Supplemental Security Income and for Social Security Disability Insurance Benefits. Whitzell argues that the Commissioner's mental residual functional capacity findings were not supported by substantial evidence and that the Commissioner failed properly to consider Whitzell's myofascial pain disorder. Pl.'s Mem. Supp. Mot. Reverse Decision Comm'r 1, ECF No. 15

1

("Pl.'s Mem."). Whitzell requests that this Court reverse the decision of the Commissioner, remand for further consideration, and award her attorneys' fees. Id. at 14. The Commissioner has filed a motion for an order affirming his decision. ECF No. 16.

**A. Procedural Posture**

On May 4, 2004, Whitzell filed a Supplemental Security Income application ("Second SSI Application")[1] and a Social Security Disability Insurance Benefits application ("SSDI Application").[2] In both applications Whitzell alleged that her disability began on April 1, 2001. See Admin. R. 699. On February 22, 2005, Whitzell filed a request for a hearing regarding both applications. Id. On March 16, 2006, the hearing officer held a consolidated hearing on both of these applications and the earlier remanded First SSI Application. Id. On August 18, 2006, the hearing officer denied all three applications and ruled that Whitzell was not disabled at any time between April 1, 2001, and August 18, 2006. Id. at 339-52.

On October 20, 2006, Whitzell requested review by the Appeals Council. Id. at 333. On November 20, 2006, the Appeals

---

[1] Whitzell's First SSI Application was filed on December 11, 2001, for the benefits period from April 1, 2001 to November 17, 2003. The Commissioner denied that application and this Court affirmed that decision. See Whitzell v. Astrue, 589 F. Supp. 2d 100, 108 (D. Mass. 2008).

[2] This application is not in the record but is referenced by the hearing officer in his decision. Admin. R. 699.

Council denied Whitzell's request for review because Whitzell had missed the thirty-day deadline. Id. at 330-32. Whitzell brought suit challenging that result.

This Court issued a decision on December 10, 2008, holding Whitzell's appeal untimely with regard to the hearing officer's decision on the First SSI Application. Whitzell v. Astrue, 589 F. Supp. 2d 100, 108 (D. Mass. 2008). This Court held, however, that Whitzell's request for Appeals Council review of her Second SSI Application and First SSDI Application, covering the period from November 18, 2003, to August 18, 2006, was timely and remanded for the Appeals Council to perform such review. Id. at 107 (noting that, because the hearing officer's decision on the Second SSI Application and First SSDI Application did not follow a judicial remand, Whitzell had sixty days to file with the Appeals Council). The Appeals Council subsequently reviewed Whitzell's request and denied it on August 20, 2009. Admin. R. 692-95. Whitzell brought the present suit to challenge this denial. This appeal thus pertains only to the period from November 18, 2003 to August 18, 2006.[3]

---

[3] Whitzell filed a third SSI application alleging a disability onset date of August 4, 2001. The Commissioner denied this claim. Whitzell appealed, and this Court affirmed. See Whitzell v. Astrue, 726 F. Supp. 2d 48 (D. Mass. 2010).

B.  **Factual Background**[4]

Whitzell was born on November 27, 1971.  Id. at 292.  As of October 2004, she lived with her four children aged twelve, thirteen, fourteen, and sixteen and her five-year-old niece whom she was in the process of adopting.  Id. at 513.  Whitzell has past work experience as a certified nurse's assistant, bartender, and cashier.  Id. at 83.

1.  **Physical Impairments**

Whitzell went to the emergency room for back pain on August 28, 2004.  Id. at 500-01.  During the visit, Whitzell was in moderate distress and had vertebral point tenderness, but she was alert and oriented in time, place, and person, and her extremities were non-tender with a full range of motion.  Id. at 502.  Four days later, Whitzell followed up with Dr. Christos Kapogiannis, a general practitioner, and was described as "doing reasonably well."  Id. at 572.

On October 29, 2004, on referral from Dr. Kapogiannis, Whitzell was evaluated by Dr. Parakrama Ananta, a specialist in physical medicine and rehabilitation.  Whitzell was diagnosed with myofascial low back pain.  Id. at 537.  Dr. Ananta concluded that there was no need for "interventional options," and recommended physical therapy instead.  Id.  On May 24, 2005,

---

[4]  The relevant medical facts are limited to the period of November 18, 2003, to August 18, 2006.

4

Whitzell returned to Dr. Kapogiannis, who noted that Whitzell "never followed through with [Dr. Ananta's recommendation]." Id. at 610. During that visit, Whitzell reported suffering shortness of breath when playing baseball with her children; Dr. Kapogiannis recommended that she stop smoking. Id. In Whitzell's only other office visit with Dr. Kapogiannis, on August 17, 2005, back pain was not mentioned. See id. at 611.

The medical records of Whitzell's physical impairments were reviewed by two non-examining physicians, Dr. Beth Schaff and Dr. M. Connelly. Id. at 505-12; 552-59. They found that Whitzell could occasionally lift twenty pounds and frequently lift ten pounds. Id. at 506, 553. They also found that she could sit and stand or walk for six hours in each eight hour day. Id.

### 2. Mental Impairments

Whitzell saw psychologist Dr. Wayne Tessier eleven times between November 24, 2003, and December 21, 2005.[5] Id. at 641-51. Over this time, Dr. Tessier found that Whitzell's mood was sad; her concentration was poor; and she experienced panic, obsessive thoughts, and suicidal ideation. Id. at 641-51. Dr. Tessier diagnosed her with post-traumatic stress disorder, personality disorder not otherwise specified, and major depressive disorder, with a Global Assessment of Functioning

---

[5] She began seeing Dr. Tessier at least as early as October 202. See Admin. R. 635.

("GAF") score of 50.  Id. at 635.  Dr. Tessier's opinion did not change at later appointments.  His treatment notes also remained unchanged and appear to have been photocopied from one visit to the next.  See id. at 641-51, 347 & n.9.  The hearing officer noted that "[t]here are no other narrative treatment notes" by Dr. Tessier.  Id. at 347.

Between November 20, 2003, and May 17, 2004, Whitzell saw psychiatrist Dr. Danuta Fichna five times.  Id. at 477-82.  Her diagnoses were major depression and personality disorder.  Id. at 477.  During this period, Dr. Danuta Fichna described Whitzell's mood as euthymic[6] and noted that she denied suicidal ideation, crying, helplessness, and hallucinations.  Id. at 477-82.

On October 5, 2004, Whitzell saw Dr. Mark Sokol for a mental health clinical diagnostic interview.  Id. at 513-16.  Dr. Sokol assigned Whitzell a GAF score of 60 although he noted that her affect and mood were depressed.  Id. at 514-15.  Dr. Sokol further noted that Whitzell was, among other things, able to care for her children, dress, bathe and groom herself, work on the computer, and perform general cleaning.  Id. at 515.  Based on these facts, it was Dr. Sokol's opinion that Whitzell could understand and follow simple instructions, perform simple rote

---

[6] Whitzell implies that euthymic means irritable. See Pl's. Mem. 7.  Euthymic, however, is defined as "joyfulness; mental peace and tranquility." Stedman's Medical Dictionary 678 (28th ed. 2006). The term can also be used to refer to a neutral mood for those diagnosed with bipolar disorder.

tasks under supervision, and maintain attention and concentration for job-related tasks.  Id.

Following a November 22, 2004 visit with Dr. Danuta Fichna, the record is void of any psychiatric appointments for eight months.  See id. at 608.  On August 4, 2005, Whitzell saw a new psychiatrist, Dr. Pawel Fichna, for one visit.  Id. at 609.  Dr. Pawel Fichna found that Whitzell's mood was depressed but that she experienced a full range of affect.  Id. at 609.

In December 2005 and January 2006, Whitzell saw another psychiatrist, Dr. Rizwan Mufti, three times.  Id. at 619-22.  Dr. Mufti diagnosed Whitzell with Bipolar I disorder and assigned Whitzell a GAF score of 55, which connotes moderate symptoms.  Id. at 620.

On November 29, 2005, Dr. Tessier completed an Emotional Impairment Questionnaire at the request of Whitzell's counsel.  Id. at 347, 591-92.  He rated Whitzell's symptoms as moderate.  Id. at 592.  Dr. Tessier also completed a Supplemental Questionnaire as to mental residual functional capacity.  Id. at 593-96.  The questionnaire asked Dr. Tessier to rate Whitzell's severity of impairment in twelve areas: he rated one as moderate, five as moderately severe, and six as severe.  Id. at 593-95.

The records concerning Whitzell's mental impairments were reviewed by two non-examining mental health specialists, psychiatrist Dr. Edwin Davidson and psychologist Dr. T. Harris.

7

Id. at 521-34, 538-51. Both doctors concluded that there was insufficient evidence of a mental impairment because there were minimal treatment notes and Whitzell's attorney had refused to allow a consultative examination. Id. at 521, 533, 538, 550.

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify or reverse a decision of the Commissioner. The Social Security Act mandates that the district court must make its decision based on the pleadings and transcript of the record before the Commissioner. Further, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Id.; see also Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The First Circuit has clarified this standard as requiring a court to uphold the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)) (internal quotation mark omitted). As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks

in reviewing the record.  Id.  Complainants face a difficult task in challenging the Commissioner's determination because under the substantial evidence standard, the Court must uphold the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodrqiguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

**B.   Social Security Disability Standard**

An individual is disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a five-step sequential analysis to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520.  The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;(3) whether the impairment meets or medically equals an impairment listed under Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations; (4) whether the claimant has the residual functional capacity to perform past relevant work; and (5) whether the impairment prevents the

claimant from doing any other work considering the claimant's age, education, and work experience.  Id.

The claimant bears the burden in the first four steps to show that she is disabled within the meaning of the Act. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).  Once the claimant has established that she is unable to return to her former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to perform jobs that exist in significant numbers in the national economy.  Id.

**C. Challenges to the Hearing Officer's Decision**

The hearing officer determined that Whitzell suffered from four severe impairments: lumbar degenerative disc disease, depression-NOS, post-traumatic stress disorder, and personality disorder.  Admin. R. 702.  These impairments did not meet or medically equal any of the impairments listed in Appendix 1 of Subpart P.  Id.  The hearing officer further found that Whitzell had the residual functional capacity to perform a significant range of light, unskilled work with moderate limitations on concentration, attention, public interaction, and ordinary requirements of attendance, perseverance, and pace.  Id. at 703. The hearing officer relied on testimony from Whitzell and medical opinions from Dr. Danuta Fichna, Dr. Tessier, and Dr. Sokol.  See id. at 704-10.  The hearing officer gave less weight to Dr.

Kapogiannis's opinion that Whitzell's mental disorder rendered her completely disabled because Dr. Kapogiannis is not a mental health specialist. <u>Id.</u> at 708-09. Based on the testimony of the vocational expert, the hearing officer determined that there were a substantial number of jobs in the national economy that Whitzell was able to perform. <u>Id.</u> at 710. Therefore, the hearing officer concluded that Whitzell was not disabled under the Social Security Act and was not entitled to receive benefits. <u>Id.</u> at 712.

Whitzell challenges the hearing officer's decision on two grounds. First, Whitzell argues that the hearing officer's mental residual functional capacity findings were not supported by substantial evidence. Second, Whitzell argues that the hearing officer failed properly to evaluate her myofascial pain disorder. Pl.'s Mem. 1.

### 1. Residual Functional Capacity

Whitzell argues that the hearing officer's findings related to her mental residual functional capacity are not supported by substantial evidence because the hearing officer did not accord appropriate weight to the opinion of Dr. Tessier. Whitzell argues his opinion ought have been given greater, if not controlling, weight. Pl.'s Mem. 12.

The hearing officer is responsible for resolving evidentiary conflicts; as such, the district court must refrain from doing so

11

upon review.  Irlanda Ortiz, 955 F.2d at 769.  The hearing officer is instructed generally to accord "more weight to the opinions from [the claimant's] treating [physicians], since these sources are likely to be the medical professionals most likely to be able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)."  20 C.F.R. § 404.1527(d)(2).  The hearing officer, however, is only bound to give controlling weight to the opinions of treating physicians if "well-supported by medically acceptable clinical and laboratory diagnositc techniques and [] not inconsistent with the other substantial evidence in [the] case record."  Id.  The hearing officer "is not required automatically to give controlling weight to any 'treating' doctor's report."  Rivera v. Sec'y of Health & Human Servs., No. 92-1896, 1993 WL 40850, *3 (1st Cir. Feb. 19, 1993).

Despite Whitzell's allegations otherwise, the hearing officer adopted Dr. Tessier's overall diagnosis.  See Admin. R. 342, 641.  It was proper, however, for the hearing officer to downgrade the credibility of Dr. Tessier's opinion regarding the severity of Whitzell's impairments because of the lack of genuine narrative treatment notes; the notes appear to simply be copies updated with new dates.  See id. at 347.  Additionally, the notes include the phrase, "Refer to Dr. [Danuta] Fichna's notes" in December 2005, more than a year after Whitzell stopped seeing Dr. Danuta Fichna.  Id. at 651.  Dr. Tessier's opinion that

Whitzell's mental impairments severely limited her functioning is inconsistent with Whitzell's own admissions, the opinions of other mental health specialists, and Dr. Tessier's own opinion in the Emotional Impairment Questionaire completed in November 2005, when Dr. Tessier noted Whitzell's symptoms to be moderate rather than severe. Id. at 592. Thus, the hearing officer's decision not to give great weight to Dr. Tessier's opinion was supported by substantial evidence because that opinion was inconsistent with other medical evidence in the record.

### 2. Myofascial Pain Disorder

Whitzell next claims that the hearing officer erred by acknowledging her myofascial pain disorder diagnosis but not considering the limitations it imposed or explaining his reasoning for finding no limitations. Pl.'s. Mem. 13. Although the hearing officer did not discuss Whitzell's myofascial pain disorder by name, he addressed her back pain at length. Admin. R. 344-39. He concluded that her claims of debilitating pain were "not entirely credible," id. at 344, because they were not supported by objective medical evidence and because Whitzell had not followed through on Dr. Ananta's recommendation that she pursue physical therapy to remedy her back pain. See id. at 348; cf. Irlanda Ortiz, 955 F.2d at 769 (ruling that claimant's failure to seek treatment was evidence that his pain was not as unrelenting as he claimed); Tsarelka v. Sec'y of Health & Human

13

Servs., 842 F.2d 529, 534 (1st Cir. 1988) ("Implicit in a finding of disability is a determination that existing treatment alternatives would not restore a claimant's ability to work."). Moreover, when Dr. Ananta made the diagnosis, no mention was made of the disorder being severe or limiting Whitzell's functioning. Admin. R. 537. In fact, Dr. Ananta specifically noted that interventional treatment was unnecessary. Id. Based on these considerations, it was appropriate for the hearing officer to find that Whitzell's myofascial pain disorder did not rise to the level that she claimed, and his analysis of her back pain was proper.

Thus, this Court holds that the hearing officer's findings with respect to Whitzell's back pain and the lack of limitations stemming from her myofascial pain disorder were supported by substantial evidence.

### III. CONCLUSION

For the reasons stated above, this Court DENIES Whitzell's motion to reverse or remand, ECF No. 14, and ALLOWS the Commissioner's motion for an order affirming his decision, ECF No. 16. Judgment shall enter for the Commissioner.

So Ordered.

      /s/ William G. Young  
      William G. Young  
      District Judge